**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| POET RESEARCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cv-01285 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| HYDRITE CHEMICAL COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff POET Research, Inc. ("POET") is a producer of ethanol and other biorefined products. Relevant here, POET owns four patents covering methods, processes, and systems for remediating toxins present in feedstock used in biorefinery processes. According to POET, Defendant Hydrite Chemical Company ("Hydrite") is infringing on POET's patents by selling certain products that it claims can be used to remediate toxins in the corn-grain byproduct of an ethanol manufacturing process. For that reason, POET has brought the present action, with its now-operative First Amended Complaint ("FAC") asserting four claims for patent infringement in violation of 35 U.S.C. § 271, and one claim for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.* Now before the Court is Hydrite's motion to dismiss the FAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (Dkt. No. 22.) For the reasons that follow, Hydrite's motion is granted. While the Court finds that it lacks personal jurisdiction and venue is not proper in this District, instead of dismissing the case, the Court will transfer it to a district court with personal jurisdiction where venue would be proper.

**BACKGROUND**

As alleged in the FAC,[1] POET is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota, that along with its affiliated entities, has become one of the world's largest producers of ethanol and other products, such as animal feed, made from the byproduct of the ethanol manufacturing process. (FAC ¶¶ 4, 11, 13, Dkt. No. 20.) POET holds more than 100 U.S. patents, including U.S. Patent Nos. 11,076,621 ("'621 Patent"), 11,800,884, 11,882,861, and 11,950,617 (collectively, "Asserted Patents"), each of which is entitled "Remediation of Toxins in Biorefinery Process Streams." (*Id.* ¶¶ 14, 17–20.) The Asserted Patents "provide methods, processes, systems, and grain biorefineries to reduce toxicity, the concentration, or both, of toxins present in feedstock used in biorefinery processes. These inventive processes allow for remediation of feedstock (*e.g.*, grains) and improving the quality and nutritional value of such feedstock that may otherwise go to waste." (*Id.* ¶ 16.)

Defendant Hydrite is a corporation organized in Wisconsin with its principal place of business in Brookfield, Wisconsin. (*Id.* ¶ 5.) Hydrite is a chemical company that makes industrial products for several industries, including the biofuel industry. (*Id.* ¶ 22.) In addition, Hydrite offers its customers technological and equipment support services. (*Id.*) One of the products that Hydrite offers its biofuel customers is Hydri-Maize CB-400 ("CB-400"), a sulfite compound that Hydrite advertises as a solution that can be used to remediate deoxynivalenol ("DON") and

---

[1] For purposes of the present motion, the Court summarizes the factual allegations of the complaint but, of course, does not vouch for their veracity in doing so.

aflatoxin, two mycotoxins in the corn-grain byproduct of an ethanol manufacturing process. (*Id.* ¶¶ 23, 27, 31.)

In October 2022, Hydrite contacted POET about CB-400, touting early trial data showing its efficacy in reducing mycotoxins in the animal feed byproduct of ethanol manufacturing and later following up with additional information regarding the product. (*Id.* ¶¶ 23–24.) Sometime after November 1, 2022, POET notified Hydrite that it had a patent that encompassed the use of CB-400 to remediate mycotoxins in the animal feed byproduct of an ethanol manufacturing process, specifically the '621 Patent, which had been issued on August 3, 2021. (*Id.* ¶¶ 17, 28–29.) Hydrite did not dispute the '621 Patent's applicability and began to discuss with POET the possibility of a license for that patent, but no agreement was reached. (*Id.* ¶¶ 29, 41.) Subsequently, POET was issued the other three Asserted Patents. (*Id.* ¶¶ 18–20, 30–32.)

Along with CB-400, POET has identified at least two other products that Hydrite advertises and sells for the purpose of reducing mycotoxins: Hydri-Maize CB-427 and product 2216 (collectively, "Accused Products"). (*Id.* ¶¶ 33–37.) POET alleges that Hydrite directs its customers to use the Accused Products in a manner that infringes on each of the Asserted Patents. (*Id.* ¶¶ 38–41.) Specifically, POET accuses Hydrite of promoting the Accused Products as chemical additives that can be used to treat mycotoxins found in the animal feed byproduct of an ethanol manufacturing process. (*Id.* ¶ 41.) Accordingly, Counts I through IV of POET's FAC assert patent infringement claims for both direct infringement in violation of 35 U.S.C. § 271(a) and induced infringement in violation of 35 U.S.C. § 271(b).

In addition to the patent infringement claims, Count V of the FAC asserts a claim under the DTSA. That claim arises out of Hydrite's employment of Chad Poppe, who previously worked for POET between 2004 and 2013. (FAC ¶ 42.) During his tenure at POET, Poppe was

involved in the research and development of mycotoxin remediation methods that ultimately led to the issuance of the Asserted Patents. (*Id.* ¶¶ 44–46.) As a result, Poppe had knowledge of and access to POET's trade secrets concerning mycotoxin remediation. (*Id.* ¶¶ 44–51.) Shortly after Hydrite hired Poppe in August 2019, Hydrite began developing and testing the Accused Products for treating mycotoxins in biorefinery processes. (*Id.* ¶ 55.) POET contends that Hydrite's ability to put the Accused Products to such use quickly demonstrates that Hydrite must have relied on Poppe's knowledge of POET's trade secrets. (*Id.* ¶ 59.) Therefore, POET alleges that Hydrite violated the DTSA by misappropriating POET's trade secrets for its own benefit.

## DISCUSSION

Hydrite asks this Court to dismiss the FAC for lack of personal jurisdiction, arguing that it is a Wisconsin-based business that lacks the minimum contacts with Illinois necessary for this Court to exercise jurisdiction over it. Further, even if it is subject to jurisdiction in Illinois, Hydrate nonetheless claims that the Northern District of Illinois is not a proper venue for this action. While POET insists that both personal jurisdiction and venue are proper, in the event that the Court finds that POET has not sufficiently established either jurisdiction or venue, POET requests leave to take jurisdictional discovery.

### I.      Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but once the defendant moves to dismiss the complaint . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (internal quotation marks omitted). When a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without

holding an evidentiary hearing, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). In considering the motion, any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in the affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true. *Id.*

Because questions of personal jurisdiction are "intimately involved with the substance of the patent laws," the Court analyzes the matter under Federal Circuit precedent. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017) (internal quotation marks omitted).[2] As to the determination of personal jurisdiction over an out-of-state defendant, the Federal Circuit asks two questions: (1) is service of process permitted under the forum state's long-arm statute and (2) would the assertion of personal jurisdiction violate due process. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). Because Illinois's long-arm statute allows for the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, 735 ILCS 5/2-209(c), the inquiry here collapses into a single

---

[2] The Court notes that Federal Circuit precedent governs the substantive analysis of the propriety of personal jurisdiction, whereas Seventh Circuit precedent governs the procedural requirements associated with a Rule 12(b) motion. *E.g.*, *RAH Color Techs., LLC v. Quad/Graphics, Inc.*, No. 17 C 4931, 2018 WL 439210, at *1 (N.D. Ill. Jan. 16, 2018) (explaining that even where the substance of a Rule 12(b) motion in a patent case turns on "subject matter that is controlled by Federal Circuit law, the Federal Rules . . . provide the procedural vehicle for such a challenge [such that] the Court follows Seventh Circuit law as it pertains to the procedural requirements" (internal quotation marks and citation omitted)).

determination as to whether exercising personal jurisdiction over Hydrite comports with due process. *Avocent*, 552 F.3d at 1329. And due process requires that an out-of-state defendant like Hydrite maintain "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Personal jurisdiction can be general or specific. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). "General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently continuous and systematic, even when the cause of action has no relation to those contacts." *Id.* (internal quotation marks omitted). Given that Hydrite was incorporated in Wisconsin and has its principal place of business there, POET does not contend that this Court may exercise general jurisdiction over Hydrite. Thus, the Court considers only whether POET has shown that this Court may exercise specific jurisdiction over Hydrite. That inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). To determine whether it has specific jurisdiction over a nonresident defendant, "a court considers whether: (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities within the forum state, and (3) the assertion of personal jurisdiction is reasonable and fair." *Grober*, 686 F.3d at 1346 (internal quotation marks omitted). The first two factors of the test "correspond with the 'minimum contacts' prong of *International Shoe*," and the plaintiff has the burden of proving both. *Id.* If the plaintiff shows the requisite minimum contacts, then the burden shifts to the defendant with respect to the third factor, which "corresponds with the 'fair play and substantial justice' prong" of *International Shoe*." *Id.* Put

another way, the defendant must demonstrate that personal jurisdiction is unreasonable or unfair. *Id.*

To establish direct patent infringement, a plaintiff must prove that the defendant, "without authority, makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Thus, showing the requisite minimum contacts with the forum requires the plaintiff to show that the defendant "did one of those listed activities in" the forum state. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999). "Indeed, even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim of patent infringement." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1001 (Fed. Cir. 2018) (internal quotation marks omitted). The key question is whether the defendant's forum-state contacts were connected to any alleged infringement. *See HollyAnne*, 199 F.3d at 1308 n.4 ("The proper test for 'giving rise' to a cause of action is . . . . is whether the activity in the forum state is a basis for the cause of action."); *Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 41 (D. Mass. 2003) ("To establish that this lawsuit 'arises out of or relates to' [the defendant's] contacts with Massachusetts, the plaintiffs must make a *prima facie* showing that their claim for patent infringement is connected to [the defendant's] activity within the Commonwealth."). And that inquiry entails "an examination of the underlying patent infringement claim." *Moldflow*, 296 F. Supp. 2d at 41.

As Hydrite is quick to point out, the Asserted Patents all provide for processes, methods, and systems, which significantly colors the nature of the infringement claims and, in turn, impacts the minimum-contacts analysis. Process and method patents claim a series of steps, and neither type of patent is infringed unless all those steps are carried out. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) ("A method patent claims a number of steps;

under this Court's case law, the patent is not infringed unless all the steps are carried out.");

*NTP, Inc. v. Rsch. In Mot., Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("A method or process

consists of one or more operative steps, and, accordingly, it is well established that a patent for a

method or process is not infringed unless all steps or stages of the claimed process are utilized."

(internal quotation marks omitted)), *abrogated on other grounds by*, *Zoltek Corp. v. United*

*States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012). Similarly, "direct infringement by 'use' of a

system claim requires a party to use each and every element of a claimed system"—*i.e.*, the end

user must "put[] every element collectively into service." *Centillion Data Sys., LLC v. Qwest*

*Commc'ns*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (internal quotation marks omitted). Further, for

purposes of a direct infringement claim under § 271(a), there is a "single-entity requirement"

limiting "liability only to circumstances where all steps of a claimed method are performed by or

attributable to a single entity." *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344,

1360 (Fed. Cir. 2019) (internal quotation marks omitted).

Here, POET alleges that Hydrite is infringing on the Asserted Patents by selling and

offering to sell CB-400 and other Accused Products for use in reducing the levels of mycotoxins

in corn. Yet POET implicitly acknowledges that the Accused Products are not themselves an

infringing process, method, or system, but rather products that can be used to carry out one

component of the Asserted Patents' claimed processes.[3] (*See, e.g.*, FAC ¶ 2 ("Hydrate has

---

[3] The Federal Circuit has strongly suggested that direct infringement of a method or process patent can only be shown by "use" as opposed to sales or offers to sell. *E.g.*, *NTP*, 418 at 1319–21 (observing that "Congress has consistently expressed the view that it understands infringement of method claims under section 271(a) to be limited to use" but declining definitively to adopt a position on the matter); *see also In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002) ("A process is . . . not sold in the same sense as is a tangible item."). While a system can be sold, to infringe a system patent through sale, it still must be the case that "all of the elements of the claim are present in the accused system[]." *Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1345 (Fed. Cir. 2019) (internal quotation marks omitted).

infringed . . . the Asserted Patents . . . by making, using, offering for sale, selling and/or importing [the Accused Products] *for use in* POET's claimed processes and grain biorefineries . . . ." (emphasis added).) Indeed, the sodium bisulfite chemical mixture underlying the Accused Products has a variety of uses, and Hydrite marketed products incorporating sodium bisulfite long before the first of the Asserted Patents was issued. (Ludtke Decl. ¶¶ 10–16, Dkt. No. 24.) That the Accused Products can be used to infringe on the processes and methods provided in the Asserted Patents does not suffice to show direct infringement. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."). Rather, to show direct infringement, POET must show that Hydrite performed all the steps of an Asserted Patent.

Given what it will have to prove to establish direct infringement, the key question for purposes of specific jurisdiction is whether POET can show at least a plausible inference of Hydrite performing the entirety of a patented process or method in Illinois or taking some action in Illinois in service of its infringement elsewhere. POET claims that it can easily support its *prima facie* case of personal jurisdiction with an email that Poppe, acting on behalf of Hydrite, sent to POET in October 2022 about CB-400. In that email, Poppe informs a representative from POET that Hydrite had been "seeing great results with plant trials in the Indiana, Illinois and rest of the eastern production area with minimizing DON in DDGS [dried distiller's grains] through our chemistry called CB-400." (FAC, Ex. B, Dkt. No. 20-3.) According to POET, Poppe's reference to trials in Illinois sufficiently demonstrates that Hydrite had been performing the Asserted Patents' methods and processes for mycotoxin remediation in Illinois.

However, Hydrite responds to POET's evidence with declarations in which Hydrite acknowledges conducting plant trials in Hennepin, Illinois but explains that those trials were

completed by February 7, 2020—prior to the August 3, 2021, issuance of the '621 Patent, the

first-issued Asserted Patent. (Ludtke Decl. ¶ 19; Suppl Ludtke Decl. ¶¶ 13–14.[4]) And none of the

other testing discussed in Poppe's email was conducted after the '621 Patent was issued. (*Id.*)

While POET contends pre-issuance contacts still count, since it has provisional rights in the '621

Patent pre-dating its date of publication, the Federal Circuit has made clear that a defendant's

pre-issuance conduct "cannot constitute infringing acts giving rise to [a] claim because they did

not occur 'during the term of the patent.'" *NexLearn*, 859 F.3d at 1376 (quoting 35 U.S.C.

§ 271(a)); *see also Leachman Cattle of Colo., LLC v. Am. Simmental Ass'n*, 66 F. Supp. 3d 1327,

1337 (D. Colo. 2014) ("It is axiomatic that there can be no infringement of a patent prior to its

issuance." (internal quotation marks omitted)).[5] The Court therefore finds that Poppe's email

does not evidence Hydrite's minimum contacts with Illinois.

POET's other evidence of Hydrite's Illinois contacts is likewise too attenuated from

directly infringing activities to confer specific jurisdiction. In particular, POET argues that

---

[4] POET filed a motion to strike Hydrite's supplemental declaration, arguing that the declaration improperly sought to introduce new evidence and new facts for the first time in reply. (Dkt. No. 35.) The Court denies POET's motion to strike and will consider Hydrite's supplemental declaration because that declaration simply elaborates upon facts introduced in Hydrite's first declaration and was submitted in response to POET's arguments regarding the insufficiency of Hydrite's first declaration. *E.g.*, *Sun Chenyan v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 20 cv 00221, 2021 WL 1812888, at *6 (N.D. Ill. May 6, 2021) (denying motion to strike "the arguments, declarations, and exhibits found in [the defendant's] Reply briefing [because they] relate to arguments made in the initial motion to dismiss"). For example, POET faulted Hydrite's first declaration for vaguely stating that the tests discussed in Poppe's email "were completed before the patents issued and have not continued after the patents issued" (Ludtke Decl. ¶ 19), and not providing specific dates or details about the location of the testing. Hydrite's supplemental declaration supplied those details. (Suppl. Ludtke Decl. ¶ 13.)

[5] Under 35 U.S.C. § 154(d), "a patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application of such patent . . . and ending on the date the patent is issued" engages in specified forms of infringing conduct but only if the person "had actual notice of the published patent application." To the extent Hydrite's pre-issuance plant trials could be accounted for in the specific jurisdiction inquiry, it appears that it did not have notice of the publication of any Asserted Patent at the time those trials were being conducted. As alleged in the FAC, POET did not notify Hydrite about its patent rights until sometime after November 1, 2022. (FAC ¶¶ 27–28.)

Hydrite has attended several conferences in Illinois where it promoted the Accused Products as part of its "robust range of food processing solutions." (Abdelnour Decl., Ex. E, Dkt. No. 31-5.) Since sales or offers to sell the Accused Products are not, standing alone, acts of direct infringement, the key inquiry with respect to Hydrite's trade show activities is whether Hydrite "used" the Asserted Patents' methods, processes, or systems. "Several courts addressing whether a defendant has 'used' a patented invention have held that the mere demonstration or display of an accused product, even in an obviously commercial atmosphere is not an act of infringement for purposes of § 271(a)." *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1140 (Fed. Cir. 2008) (internal quotation marks omitted). Rather, for a trade show contact to be a relevant jurisdictional contact, the patented method or process must actually be performed or the system be put into service. *See id.* at 1141 (finding no direct infringement of a system patent where the accused product was displayed at a trade show but not "put into action or service"). That Hydrite exhibited the Accused Products at trade shows among its many other offerings does not show that Hydrite actively practiced the Asserted Patents' processes and methods at those trade shows. Indeed, it is entirely speculative that Hydrite was even displaying them for purposes of an infringing use, given that the underlying chemistry has "a variety of customer-controlled uses." (Ludtke Decl. ¶ 12.)

To this point, the Court has focused on contacts related to direct infringement. But POET has also alleged claims for induced infringement. Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To state a claim for induced infringement, a plaintiff must sufficiently plead facts from which it can be reasonably inferred that a direct infringer exists, though the "plaintiff need not identify a *specific* direct infringer." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir.

2012). Unlike with direct infringement, sales of a product capable of infringing a product or method can in some instances support a claim for induced infringement. Thus, POET may establish specific jurisdiction with respect to the induced infringement claims by showing that Hydrite "knows that the direct infringement occurred in [Illinois] and ha[d] some role in inducing or producing the combination of components that constitute such infringement." *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1246 (D. Colo. 2010).

As an initial matter, the Court notes that POET does not come forward with evidence that Hydrite sold or offered to sell the Accused Products to a particular customer in Illinois.[6] Instead, POET's evidence consists of Hydrite's general offers to sell the Accused Products through its website, which offers to ship to anywhere in the United States. (FAC, Ex. F–G, L, Dkt. Nos. 20-7, 20-8, 20-13; Abdelnour Decl., Ex. C, Dkt. No. 31-3.) Yet the mere maintenance of website that offers an accused product for sale throughout the country is not, standing alone, enough to subject a defendant to personal jurisdiction in the forum state. *NexLearn*, 859 F.3d at 1378 ("[The defendant's] inclusion of Kansas in its dropdown of all states on its website is not enough to subject [the defendant] to jurisdiction in Kansas.") Without more, that Hydrite is amenable to selling the Accused Products to Illinois residents "does not establish minimum contacts arising out of or related to the infringement claim." *Id.*

In any case, "[a] seller does not induce infringement of a method claim by merely selling an apparatus capable of performing the method." *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1360 (Fed. Cir. 2015). "Inducement requires such steps as encouraging, recommending, or

---

[6] As discussed above, Hydrite has acknowledged sales of an Accused Product to a customer in Hennepin, Illinois pre-dating the issuance of the first-issued Asserted Patent. And the Federal Circuit has held "that the general rule is that inducement of infringement under § 271(b) does not lie when the acts of inducement occurred before there existed a patent to be infringed." *Nat'l Presto Indus., Inc. v. West Bond Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996).

promoting an infringing use." *Id.* (internal quotation marks and citations omitted). For example, "the sale of the accused product together with Defendant's 'instruction manuals [sufficiently] demonstrate direct infringement by customers in the context of induced infringement.'" *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 887 (W.D. Tenn. 2017) (quoting *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017)).

There is evidence suggesting that Hydrite advertises certain Accused Products' functionality in remediating mycotoxins in dried distiller's grains. (FAC, Exs. F–G.) Yet describing an infringing mode is not the same thing as actively teaching it. *E.g.*, *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1196 (D. Or. 2015) ("The documents and quotations that [the plaintiff]] has identified do not so much 'teach an infringing use' as identify and describe allegedly infringing functionality."); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("[I]nducement must involve the taking of affirmative steps to bring about the desired result."); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("[M]ere knowledge of possible infringement will not suffice."). Moreover, "liability for inducement must be predicated on direct infringement," which means for induced infringement of a process or method patent, the act of inducement must be connected to "a single actor" who ultimately carries out "all steps of the patent." *Limelight*, 572 U.S. at 921, 924. Thus, the Court believes that POET needed to show evidence of Hydrite's sale or offer of sale of an Accused Product to an Illinois-based customer paired with some affirmative act on Hydrite's part evidencing its intent that the purchaser use the Accused Product to carry out the steps of one or more Asserted Patents. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1369 (Fed. Cir. 2017) ("'[V]ague instructions that require one to look outside the label to understand the alleged implicit encouragement do not, without more, induce infringement." (internal

quotation marks omitted)); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir.

2003) ("[S]pecfic intent and action to induce infringement must be proven."). The record before

this Court does not contain such evidence.

In addition to the direct and induced infringement claims, the FAC also asserts a claim

under the DTSA. None of the allegations and evidence supporting the DTSA claim support

specific jurisdiction in Illinois. The DTSA claim focuses on the activities undertaken by Poppe

during his employment with Hydrite. Poppe's relevant employment activities were directed

toward Hydrite's Wisconsin principal place of business and, during his term of employment with

Hydrite, Poppe lived in South Dakota. (Ludtke Decl. ¶ 33.) That leaves POET to raise the same

arguments for jurisdiction over the DTSA claim as it did for its infringement claims. And, for the

reasons discussed above, the Court concludes that POET has failed to establish a *prima facie*

case for specific jurisdiction with respect to any of the FAC's claims.

## II.     Venue

To the extent any of Hydrite's contacts could establish personal jurisdiction in Illinois,

the Court nonetheless finds that they would not suffice for venue in this District as to the patent

infringement claims. Under Rule 12(b)(3), a party may seek "dismissal of an action that is filed

in an improper venue." *Nicks v. Koch Meat Co.*, No. 16-cv-6446, 2016 WL 6277489, at *3 (N.D.

Ill. Oct. 27, 2016). Once venue is challenged, the plaintiff has the burden of establishing that the

case was filed in the proper District. *Gilman Opco LLC v. Lanman Oil Co.*, No. 13-cv-7846,

2014 WL 1284499, at *2 (N.D. Ill. Mar. 28, 2014). Similar to a Rule 12(b)(2) motion, a court

"may consider evidence outside the pleadings to the extent that it sheds light on whether venue is

proper." *Id.* In considering a Rule 12(b)(3) motion, "the district court assumes the truth of the

allegations in the plaintiff's complaint, **unless** contradicted by the defendant's affidavits." *Deb v.*

*SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016).  As with personal jurisdiction, the propriety of

venue is an issue unique to patent law and therefore is governed by Federal Circuit precedent. *Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1381 (Fed. Cir. 2020).

The patent venue statute, 28 U.S.C. § 1400(b), "serves as the exclusive venue provision for patent infringement cases." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 402 F. Supp. 3d 450, 455 (N.D. Ill. 2019).[7] That statute provides that a patent infringement action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, POET contends that venue is proper in the Northern District of Illinois under the second prong. Hydrite does not contest the second prong's requirement that it have a regular and established place of business in this District; Hydrite acknowledges that it has a warehouse in University Park, Illinois, which is in this District. (Ludtke Decl. ¶ 9.) Instead, it argues that venue is improper because POET fails to show that Hydrite committed any infringing acts in this District.

Courts do not treat § 1400(b) as requiring that "***all*** of the infringing activity needs to have occurred within the District so long as some act of infringement took place there." *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 943 (E.D. Tex. 2018). Still, as demonstrated in the Court's discussion above concerning the absence Hydrite's minimum contacts with Illinois, POET has failed to demonstrate that Hydrite directed any action toward Illinois that was sufficiently connected to an instance of plausible infringement. *See S. Visions, LLP v. Red Diamond, Inc.*, No. 1:18-CV-04566-ELR, 2018 WL 8221528, at *3 (N.D. Ga. Dec. 10, 2018) ("[T]he Court is not suggesting that Plaintiff did not adequately ***prove*** the alleged

---

[7] Hydrite's venue arguments concern only the patent infringement claims. It does not address the propriety of venue as to the DTSA claim, which is subject to the general venue provision at 28 U.S.C. § 1391.

infringement, instead, the Court finds that Plaintiff simply did not connect the alleged

infringement, whether direct or indirect, to this judicial district, as required by § 1400(b).").

While it is true that courts have generally understood "that an allegation of infringement it itself

sufficient to establish venue and the plaintiff is not required to demonstrate actual infringement

by the defendant," *Symbology Innovations, LLC v. Lego Systems, Inc.*, 282 F. Supp. 3d 916, 928

(E.D. Va. 2017) (internal quotation marks omitted), Hydrite has contravened the allegations of

infringement in this District with its declaration evidence. Specifically, Hydrite unequivocally

states that it has not "made, used, offered for sale, sold, or imported the [Accused Products] in

this District," nor has it "performed remediation processes using" the Accused Products in this

District or instructed others in this District how to perform those processes. (Suppl. Ludtke Decl.

¶¶ 16–20; *see also* Ludtke Decl. ¶¶ 19, 25–26.) The Court therefore finds that POET has failed to

carry its burden of demonstrating that venue is proper in this District with respect to the patent

infringement claims.

### III.    Jurisdictional Discovery

Having concluded that the current record does not support either personal jurisdiction or

venue in this District, the Court turns to consider POET's request for leave to conduct

jurisdictional discovery. To proceed before this Court, the relevant discovery would necessarily

be focused on whether Hydrite has committed any acts of infringement in this District, since an

affirmative answer would establish personal jurisdiction questions as to all claims while a

negative answer would require either dismissal or transfer of the patent infringement claims for

improper venue. "The decision to allow limited discovery into venue rests within this Court's

discretion." *Sanderling Mgmt. Ltd. v. Snap Inc.*, No. 1:20-cv-04627, 2021 WL 843428, at *5

(N.D. Ill. Mar. 5, 2021). With respect to jurisdictional discovery, the Seventh Circuit requires

that the plaintiff "establish a colorable or prima facie showing of personal jurisdiction." *GCIU-*

*Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009) (internal quotation

marks omitted). This will Court apply the same standard with respect to venue discovery. *Niazi*

*v. St. Jude Med. S.C., Inc.*, No. 17-cv-183-jdp, 2017 WL 5159784, at *4 (W.D. Wis. Nov. 7,

2017).

   "Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual

record is at least ambiguous or unclear on the jurisdiction issue." *Ticketreserve, Inc. v. viagogo,*

*Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009). But here, Hydrite has submitted unrebutted

declarations that affirmatively refute the existence of venue in this District. Although POET

contends that it requires jurisdictional discovery to test the conclusory statements made in

Hydrite's declarations, it does not assert that Hydrite's declarations contained any untrue

statements or otherwise give the Court reason to distrust them. *See Sanderling*, 2021 WL

843428, at *5 ("Plaintiff does not suggest that [the defendant's] declarations or disclosures are

false, nor does it identify any concrete information that it needs to support its venue

arguments.").

   At most, POET points to the existence of ethanol plants within this District and

speculates that Hydrite could have sold them the Accused Products for infringing purposes.

(Abdelnour Decl., Ex. A, Dkt. No. 31-1.) Yet POET fails to provide the Court with any evidence

suggesting that any of those plants are performing the Asserted Patents' processes and methods.

Thus, the Court does not believe that POET is "entitled to discovery to establish essentially

speculative allegations." *In re Sheehan*, 48 F.4th 513, 527 (7th Cir. 2022). Finally, POET fails to

indicate how much discovery it would need to establish venue and gives only a vague suggestion

of the type of discovery it would conduct: "discovery into communications with ethanol plants in

this District concerning the reduction of mycotoxins." (POET's Opp'n at 15, Dkt. No. 30); *see,*

17

*e.g.*, *John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, No. 16-CV-05918, 2017 WL 1093150, at *13 (N.D. Ill. Mar. 23, 2017) ("[I]n Plaintiff's one sentence request for discovery, it does not articulate what discovery it seeks, why such discovery is necessary, or how such discovery could advance its arguments. Plaintiff has failed to meet its burden regarding discovery.").

Ultimately, POET's case for venue boils down to a claim that Hydrite ***might*** be selling the Accused Products to customers who ***might*** be using those products to practice the Asserted Patents' processes and methods in this District. Because the Court is not convinced that permitting POET venue discovery would amount to anything more than a fishing expedition, POET's request for leave to conduct jurisdictional discovery is denied.

### IV.    Dismissal or Transfer

As an alternative to dismissal, Hydrite raises the option of transferring this case to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1406(a). Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Transfer to another district is also a remedy available to cure a lack of personal jurisdiction pursuant 28 U.S.C. § 1631, which provides that, in a case filed before a district court that "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. *See also North v. Ubiquity, Inc.*, 72 F.4th 221, 227 (7th Cir. 2023) (confirming that the reference to "jurisdiction" in § 1631 encompasses personal jurisdiction). In proposing transfer, Hydrite represents that it will not contest personal jurisdiction or venue in the United States District Court for the Eastern District of Wisconsin, where Hydrite has its principal place of business. POET, on the other

hand, requests the opportunity to brief where the case should be transferred. Thus, while this Court finds that the interest of justice favors transfer rather than dismissal, it will not transfer the case before permitting POET the opportunity to provide its position as to the alternative judicial district to which the case should be transferred.

## CONCLUSION

For the foregoing reasons, Hydrite's motion to dismiss for lack of jurisdiction or improper venue (Dkt. No. 22) is granted as to the alternative remedy of transferring the case to a District where the exercise of personal jurisdiction and venue is proper. By September 29, 2025, POET shall make a submission of no more than five pages either indicating its agreement to Hydrite's request for the case to be transferred to the United States District Court for the Eastern District of Wisconsin or proposing an alternative venue to which this case can properly be transferred. If POET argues for a destination other than the Eastern District of Wisconsin, the Court will provide Hydrite an opportunity to respond in writing.

ENTERED:

Dated:  September 22, 2025

_____

Andrea R. Wood
United States District Judge

19